INTERSTATE AMUSEMENT COMPANY *v.* ALBERT.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 69. Argued November 10, 1915.—Decided January 10, 1916.

An exception to the general rule that findings of fact of the state court in ordinary cases coming to this court under § 237, Judicial Code, other than those arising under the contract clause of the Federal Constitution, are binding upon this court, is where a Federal right has been denied as the result of a finding without support in the evidence.

In this case, the finding of the state court that a foreign corporation was doing business in the State other than interstate commerce having adequate support in the record, it is binding upon this court.

A State may restrict the right of a foreign corporation to engage in

business within its limits or to sue in its courts so long as interstate commerce is not burdened thereby.

A corporation of another State carrying on business in the State of Tennessee other than interstate commerce is not deprived of its property without due process of law, nor is its interstate commerce interfered with, by the statute of Tennessee requiring a foreign corporation to file a copy of its charter and take certain other specified steps before it can maintain an action in the courts of the State. '

128 Tennessee, 417, affirmed.

THE facts are stated in the opinion.

*Mr. G. H. West,* with whom *Mr. W. E. Drummond* and *Mr. W. B. Miller* were on the brief, for plaintiff in error:

Plaintiff in error was not engaged in doing business in Tennessee. Therefore, the decision of the court below is without support in law, and operates to deprive the company of its property without due process of law.

There is no evidence to support the judgment and no basis for the conclusion that the company did business in Tennessee as contemplated by the Act. *Railroad* v. *Albers Commission Co.,* 223 U. S. 573; *Creswell* v. *Knights of Pythias,* 225 U. S. 246; *Wood* v. *Chesborough,* 228 U. S. 678; *Railroad* v. *McWhirter,* 229 U. S. 277; *Washington* v. *Fairchild,* 224 U. S. 510.

On a writ of error to a state court in such a case this court will review the findings of fact by the state court and analyze the facts when necessary to determine whether or not a Federal right, seasonably claimed, has been infringed. *Washington* v. *Fairchild,* 224 U. S. 510; *Railroad* v. *North Dakota,* 236 U. S. 485; *Railway* v. *West Virginia,* 236 U. S. 605.

While generally, if a decision of the state court can be upheld on an independent ground it will not be disturbed, yet if such ground or conclusion can only be upheld by a denial of due process of law, the state court will be reversed. *Stewart* v. *Michigan,* 232 U. S. 665.

Where a state statute creates a new offense and prescribes

the penalty, or gives a new right and declares a remedy, the punishment or remedy can be only that which the statute prescribes. *Wilder Mfg. Co.* v. *Corn Products Co.*, 236 U. S. 165; *Lupton Sons Co.* v. *Automobile Club*, 225 U. S. 489.

The general right to contract relative to business and to purchase or sell labor is protected from prohibitive state legislation by the Fourteenth Amendment. *Adair* v. *United States*, 208 U. S. 173.

Plaintiff in error had a right to make the contract involved in this case and to engage actors in Chicago pursuant thereto. A judgment based solely upon a statute against foreign corporations doing business in a State is void when applied to such business done beyond the State, because a deprivation of property without due process of law. *Old Wayne Association* v. *McDonough*, 204 U. S. 22; *Simon* v. *Railroad*, 236 U. S. 115; *Railway* v. *Polt*, 232 U. S. 65.

The highest court of a State is an instrumentality of the State through which the latter may deprive a citizen of his property without due process of law. *Chicago & C. R. R.* v. *Chicago*, 166 U. S. 226; *Abbott* v. *Bank of Commerce*, 175 U. S. 409.

Whatever of business, if any, plaintiff in error did in Tennessee in connection with this contract, or while it was in force, was interstate commerce and not subject to burdens imposed by statutes of Tennessee. To hold otherwise was violative of Art. I, § 8, sub-sec. 3, Federal Constitution. *International Text Book Co.* v. *Pigg*, 217 U. S. 91; *Same* v. *Lynch*, 218 U. S. 664; *Buck Stove Co.* v. *Vickers*, 226 U. S. 205; *Heyman* v. *Hayes*, 236 U. S. 178.

The contention that a statute as construed and applied by a state court is void as an attempted state regulation of interstate commerce, will, in event of a decision against such contention, support a writ of error from this court. *Adams Exp. Co.* v. *Kentucky*, 214 U. S. 218.

Plaintiff in error did not solicit other contracts in Ten-

nessee at the time the one in question was made or during its existence. But if it had done so, as such contracts were to be executed by it in Chicago in ordinary course, the solicitation thereof in Tennessee by traveling salesmen would have been protected as interstate commerce against the burdens imposed by the Tennessee statutes. *Stewart* v. *Michigan,* 232 U. S. 665. *Crenshaw* v. *Arkansas,* 227 U. S. 389.

The transmission of a proposal for an interstate transaction is a part of the interstate transaction. *Dozier* v. *Alabama,* 218 U. S. 124; *Davis* v. *Virginia,* 236 U. S. 697; *West. Un. Tel. Co.* v. *Milling Co.,* 218 U. S. 406; *West. Un. Tel. Co.* v. *Brown,* 234 U. S. 542.

A State cannot tax a corporation for doing such character of business, yet this Tennessee statute lays a twofold annual tax on corporations subject thereto, as before shown. *Pullman Co.* v. *Kansas,* 216 U. S. 62; *Telegraph Co.* v. *Kansas,* 216 U. S. 1; *Railroad* v. *Texas,* 210 U. S. 217; *Railroad* v. *O'Connor,* 223 U. S. 280.

Neither can a State tax the property of a foreign corporation located in another State, or its capital stock represented by such property,—but this is precisely what the Tennessee statute does. *Ludwig* v. *Telegraph Co.,* 216 U. S. 146; *Pullman Co.* v. *Kansas,* 216 U. S. 62.

Interstate commerce includes the transportation of persons and property. There may be, therefore, a movement of persons as well as of property. *Hoke* v. *United States,* 227 U. S. 320.

The decision complained of denies to plaintiff in error the equal protection of the laws of Tennessee, contrary to the Fourteenth Amendment. *Lumber Co.* v. *Moore,* 126 Tennessee, 313, 321.

*Mr. F. M. Thompson* and *Mr. Joe V. Williams,* with whom *Mr. Neal L. Thompson* were on the brief, for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

Plaintiff in error recovered a judgment in one of the courts of the State of Tennessee upon a cause of action that arose out of a written contract, dated May 24, 1909, whereby it agreed to "engage and book" for the firm of Catron & Albert, then operating a theater in Chattanooga, Tennessee, a certain number of "vaudeville acts" each week for certain weeks in each year, during the continuance of the contract, in consideration of the payment weekly of a "booking fee" of ten dollars and a commission of 5% upon the salary of each performer. It appeared that plaintiff in error was a corporation of the State of Missouri, but had a *situs* in Chicago, Illinois. Upon the ground that it was guilty of non-compliance with the statute of Tennessee relating to foreign corporations doing business in the State, in that it had failed to file a copy of its charter in the office of the secretary of state, the Supreme Court of Tennessee reversed the judgment and dismissed the suit (128 Tennessee, 417), and the case comes here upon questions raised under the "commerce clause" of the Constitution of the United States and the "due process of law" and "equal protection" clauses of the Fourteenth Amendment.

Excerpts from the statute are set forth in the margin.[1]

---

[1] Acts of 1877, chap. 31; Acts of 1891, chap. 122; Amended by Acts of 1895, chap. 81, to read as follows:

"Section 1. . . . That each and every corporation created or organized under, or by virtue of, any government other than that of the State, for any purpose whatever, desiring to own property, or carry on business in this State of any kind or character, shall first file, in the office of the Secretary of State, a copy of its charter. . . .

"Section 2. . . . That it shall be unlawful for any foreign corporation to do business, or attempt to do business, in this State without first having complied with the provisions of this Act, . . .

"Section 3. . . . That when a corporation complies with the provisions of this Act, said corporation may then sue and be sued in the

It is the insistence of plaintiff in error that it could not, consistently with the cited provisions of the Federal Constitution, be required to subject itself to the law of the State unless it was doing business within the State; and that in fact it did no such business, or, if it did any, it was interstate commerce, not subject to state regulation.

Respecting the effect of the written contract under which the cause of action arose, the court held that it created merely the relationship of principal and agent between the parties; that by it plaintiff in error became the agent of Catron & Albert bound to render them the personal services called for by the contract in consideration of the specified sums to be paid by them to it, and that this consideration was to be forwarded weekly by Catron & Albert from Chattanooga, Tennessee, to Chicago, Illinois, where the office of plaintiff in error was located; that by the terms of the agreement plaintiff in error was not to be responsible for failure on the part of the actors to fulfill their contracts nor for any accident or delay preventing their arrival in Chattanooga at the times appointed; that under the contract and the evidence showing the execution of it, it was not contemplated that plaintiff in error should engage nor did it so far as the record shows engage in the interstate transportation of the troupes of vaudeville actors, and that while interstate transportation of such actors might or might not become an incident or factor in the execution of the contract, such interstate commerce was only incidental, and not a part of the agreement as made between the parties. It was held that this circumstance did not exempt the business done under the contract from state regulation or control. *Williams* v. *Fears*, 179 U. S. 270, 274, and *Hooper* v. *California*, 155 U. S. 648, 655, were cited.

courts of this State, and shall be subject to the jurisdiction of this State as fully as if it were created under the laws of the State of Tennessee; . . .

The court further found as matter of fact that it was the ordinary business of plaintiff in error to send troupes of actors from one theater to another in the State of Tennessee for the purpose of presenting plays to audiences assembled in each separate theater, and from the revenues derived by means of such performances it received an income, and its compensation arose from acts done in Tennessee in the several theaters where the troupes of actors appeared and performed; that the account sued on showed more than fifty different items, each representing plaintiff in error's share of the revenues received from as many separate and distinct performances by troupes of actors which it caused to appear in defendant theater alone; and that for the purpose of enlarging and extending its business in Tennessee plaintiff in error had agents who entered that State and made contracts with other theater owners than Catron & Albert; that its articles of association stated its purpose to be to conduct and operate a general theatrical and amusement business, and this purpose it carried out by the establishment of "circuits" on which were located theaters convenient one to another, and its scheme contemplated the making of contracts with each of these theaters similar to that of Catron & Albert, and the collection of its revenues arising from booking fees and its percentages on actors' salaries; that, in short, it was a middleman levying tribute from the owners of the houses where amusement was afforded and from the actors whose talents were employed; and that its claim in suit arose out of business thus conducted.

It is settled that such findings of fact, in ordinary cases other than those arising under the "contract clause" of the Constitution are binding upon this court. *Waters-Pierce Oil Co.* v. *Texas*, 212 U. S. 86, 97; *Rankin* v. *Emigh*, 218 U. S. 27, 32; *Miedreich* v. *Lauenstein*, 232 U. S. 236, 243. But the rule has its exceptions, as, for instance, where there is ground for the insistence that a Federal

right has been denied as the result of a finding that is without support in the evidence. *Southern Pacific Co.* v. *Schuyler*, 227 U. S. 601, 611; *North Carolina R. R.* v. *Zachary*, 232 U. S. 248, 259; *Carlson* v. *Washington*, 234 U. S. 103, 106.

Plaintiff in error makes the point that the findings here are without support in the evidence; but this is not well taken. The evidence is meagre—none having been offered by plaintiff in error—but there is evidence tending to show business transacted in the State, and it does not clearly appear to have been interstate business. Reference is made to the form of the contract, and especially its fifth paragraph, which states that plaintiff in error is acting solely in the capacity of agent of the theater owner, and is not responsible for failure of artists to fulfill their contracts, nor for any accident or delay preventing them from arriving in Chattanooga when scheduled; but the same paragraph binds plaintiff in error to "use every precaution to see that artists fulfill their contracts." Moreover, the prohibition of the statute, which, as construed and applied by the courts of Tennessee in a line of cases, renders illegal the contracts of foreign corporations carrying on business without complying with the laws applicable thereto, and debars such corporations from suing in the state courts thereon (*Cary-Lombard Lumber Co.* v. *Thomas*, 92 Tennessee, 587, 593; *Insurance Co.* v. *Kennedy*, 96 Tennessee, 711, 714; *Harris* v. *Water & Light Co.*, 108 Tennessee, 245; *Lumber Co.* v. *Moore*, 126 Tennessee, 313), was evidently established as a matter of public policy, not so much for the benefit of parties sued as in the interest of the people at large; and the question is not so much—What was agreed to be done? as—What was done?

There being adequate support in the record for the finding of the Supreme Court of the State that plaintiff in error was doing business in the State, other than inter-

state commerce, without complying with the statute quoted, the contentions based upon the commerce clause and the due process of law clause alike must fall. For the authority of the State to restrict the right of a foreign corporation to engage in business within its limits or to sue in its courts, so long as interstate commerce be not thereby burdened, is perfectly well settled. *Paul* v. *Virginia,* 8 Wall. 168, 181; *Hooper* v. *California,* 155 U. S. 648, 655; *Bank of Augusta* v. *Earle,* 13 Pet. 519, 589, 591; *Anglo-American Prov. Co.* v. *Davis Prov. Co.,* 191 U. S. 373; *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197, 203.

The insistence based upon the "equal protection" clause is unsubstantial, and calls for no discussion.

*Judgment affirmed.*