## MIDLAND LINSEED PRODUCTS CO. v. WARREN BROS. CO.

### No. 4157.

Circuit Court of Appeals, Sixth Circuit.
April 10, 1925.

E. J. Walsh and Charles L. Cornelius, both of Nashville, Tenn., for appellant.

W. R. Manier, Jr., of Nashville, Tenn. (Manier & Crouch, of Nashville, Tenn., on the brief), for appellee.

Before DONAHUE and MACK, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

The parties to this suit were plaintiff and defendant, respectively, in the court below, and shall be so designated in this opinion.

Plaintiff, a Minnesota corporation, brought this action at law against the defendant, a Tennessee corporation, for damages for the alleged breach of an executory contract for the purchase of 100 barrels of linseed oil to be delivered by plaintiff to defendant at defendant's place of business in Nashville, Tenn., in the months of September to December, inclusive, 1920, in 25-barrel lots per month. The contract provided that the buyer should furnish specifications to the seller in writing for shipments desired, but that, if no such specifications should be given within the time limit above mentioned, the seller would charge 1 cent per gallon per month or for any part of a month so long as the seller would be willing to carry the oil in storage for the purchaser. The first shipment of oil was made March 30, 1921, and between that and the date of October 6, 1921, 22 barrels in all were ordered out by defendant and shipped by plaintiff. Thereafter defendant declined to receive any further shipments, whereupon plaintiff instituted the present proceeding to recover for the damages claimed for the refusal on the part of defend-

ant to take the remainder of the oil specified in the contract; the damages claimed being the difference between the contract price and the market price on the dates of April 12 and 17, 1922, the date of the alleged breach, and for storage charges at the rate of 1 cent per gallon as above mentioned.

The defendant pleaded non assumpsit, nil debit, and as a further defense that plaintiff was a foreign corporation and not authorized to do business in the state of Tennessee, in that it had failed to comply with the provisions of chapter 31 of the Acts of the General Assembly of Tennessee for 1877, as amended by chapter 122 of the Acts of Tennessee for 1891 amended by chapter 81 of the Acts of Tennessee for 1895, which, in substance, provided that it should be unlawful for a corporation organized under the laws of a state other than Tennessee to carry on or do business in Tennessee without filing a copy of its charter in the office of the secretary of state, and thus becoming in effect a domestic corporation in Tennessee.

It is further pleaded by way of defense that the contract in question was a Tennessee contract, that plaintiff was doing business in Tennessee within the meaning of the acts mentioned, in that plaintiff shipped its oils to its agents, J. B. Hayes & Co., of Nashville, Tenn., where the same were stored in warehouses, and that from such storage warehouses deliveries would be made to defendant or other purchasers; thus constituting the business, as contended by defendant, intrastate and not interstate.

Plaintiff filed what is designated in the record as a demurrer to defendant's plea, wherein it attacked the plea as (1) being insufficient because of its failure to state sufficient facts showing a bar to plaintiff's right of action; (2) that the statutes of Tennessee referred to do not declare contracts of a noncomplying foreign corporation void, but merely provide a penalty for noncompliance therewith, and that such statutes do not prohibit a foreign corporation from seeking relief in courts of the United States; (3) that federal courts will not deny relief to a foreign corporation unless there is a specific statute declaring contracts upon which it is sought to have proceedings maintained void; (4) that the transaction in question was interstate; (5) that defendant's plea admits the execution of the contract and the acceptance of a portion of the benefits thereunder, and therefore defendant is estopped to question the validity of the contract or the right of plaintiff to sue thereon; (6) that the transaction

872

on its face is an interstate transaction and that any attempted limitation by a state of such transaction would be in violation of the commerce clause of the Constitution of the United States.

It seems the lower court treated the demurrer as a motion to strike defendant's plea, and we think properly overruled the same. Upon the issues thus presented the matter was heard by the District Court and resulted in a dismissal of plaintiff's suit.

Three questions are presented:

(1) Was the contract a Tennessee contract? However, this question is not so important as the two following.

(2) Was plaintiff in this instance engaged in intrastate business?

(3) In view of the Tennessee statutes above mentioned, can plaintiff maintain this proceeding?

■ The record discloses that the contract upon which this suit was brought was signed in Minneapolis, Minn., by plaintiff, sent to its agents, J. B. Hayes & Co., at Nashville, Tenn., who presented it to defendant, where and when defendant signed the same. These facts constitute this a Tennessee contract. Holder v. Aultman, Miller & Co., 169 U. S. 81, 18 S. Ct. 269, 42 L. Ed. 669.

We are of opinion, however, that whether this be construed as a Tennessee contract or a Minnesota contract would not affect the relative rights of the parties, in view of the other defenses interposed to this action. Fletcher's Cyc. Cor. vol. 9, § 5995, p. 10159.

■ The record further discloses, as mentioned above, that the method of doing business on the part of plaintiff was that from Minneapolis, where plaintiff's principal office was located, its products would be shipped in carload lots to its agents in Nashville, Tenn., where they would be stored in warehouses for distribution to customers. The distribution would be made from the stock in the Nashville warehouses. Plaintiff's agents at Nashville would solicit orders, and, when received, those orders would be filled from the common stock in the Nashville warehouses, and such was the course contemplated when the contract in question was executed, and such was the course pursued with the 22 barrels which were delivered to defendant under the contract. This was plaintiff's method in general of doing business in that section of Tennessee. These facts show plaintiff was engaged in doing business in Tennessee and that the business done with de-

fendant was intrastate business, thus subjecting plaintiff to the provisions of the Tennessee statutes. Interstate Aumsement Co. v. Albert, 239 U. S. 560, 36 S. Ct. 168, 60 L. Ed. 439, affirming 128 Tenn. 417, 161 S. W. 488; American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 S. Ct. 365, 48 L. Ed. 538, affirming 110 Tenn. 524, 75 S. W. 1037, 100 Am. St. Rep. 814; General Oil Co. v. Crain, 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754; Butler Bros. Shoe Co. v. Rubber Co. (C. C. A.) 156 F. 1.

The pertinent Tennessee statutes are embraced within sections 2545 to 2548, inclusive, of Shannon's Code of Tennessee. Section 2545 merely provides that corporations chartered or organized under the laws of governments other than Tennessee desiring to do business in Tennessee may become qualified for such purpose upon compliance with the further provisions of the act. Acts of 1877, c. 31, § 1; 1891, c. 122, § 1.

Section 2546 provides that a foreign corporation desiring to do business in Tennessee shall first file a copy of its charter duly authenticated in the office of the secretary of state and must further cause an abstract of its charter to be recorded in the office of the register of each county in which the corporation proposes to carry on its business. Acts 1877, c. 31, § 2; 1891, c. 122, § 2; 1895, c. 81, § 1.

Section 2547 provides: "It shall be unlawful for any foreign corporation to do business, or attempt to do business, in this state without first having complied with the provisions of this chapter * * * and a violation of this statute shall subject the offender to a fine of not less than one hundred dollars or more than five hundred dollars, in the discretion of the jury trying the case." Acts 1891, c. 122, § 3; 1895, c. 81, § 2.

Section 2548, as enacted by the Acts of 1891, c. 122, § 4, and amended by the Acts of 1895, c. 81, § 3, provides that, when a corporation complies with the provisions of these acts, it may then sue and be sued in the courts of Tennessee and be subjected to the jurisdiction of that state as fully as if it were created under its laws.

Construing these statutes, the Supreme Court of Tennessee, the highest court of the state, has held that contracts made in violation thereof are illegal and void. In the course of its decisions the court has used various phraseology in expressing its meaning. In Cary-Lombard Lumber Co. v. Thomas, 92 Tenn. 587 at pages 594 and 596, 22 S. W. 743, one of the leading cases in the state on the

question, it was held that a contract made by a corporation which had not complied with the statutes as shown above was illegal, and that no rights or remedies could be enforced thereunder. In Insurance Co. v. Kennedy, 96 Tenn. 711, at pages 713 to 717, 36 S. W. 709, a foreign corporation which had not complied with the Tennessee statute sought to maintain a suit upon a contract in the state court, whereupon it was held that such action could not be maintained and that the contract upon which the suit was brought was void because of the failure of the corporation to comply with the state's statutes. In the course of the opinion on page 714 of 96 Tenn., 36 S. W. 709, 710, it is said: "It is well settled in this state that all contracts which are prohibited by statute are void, and will not be enforced by the courts."

And further, on page 717 of 96 Tenn., 36 S. W. 709, 711: "But if the promise, though it purports to be a new contract, grow immediately out of, or be connected with, the illegal transaction, it will be utterly void."

Singer Mfg. Co. v. Draper, 103 Tenn. 262, 52 S. W. 879, declares such a transaction illegal; while in Peck-Williamson Heating & Ventilating Co. v. McKnight & Merz, 140 Tenn. 563, at page 581, 205 S. W. 419, it is held that a contract made by a foreign corporation which has not complied with the laws of Tennessee is void on the ground of public policy. This seems to be the latest holding of the state court construing the statutes in question.

It is earnestly insisted by defendant that in the case of Swope v. Jordan, 107 Tenn. 166, 64 S. W. 52, the Supreme Court of Tennessee has construed its own opinions wherein contracts of the nature of that now under consideration were before the court, and has held that, where it used in the former opinions the terms "illegal," "unenforceable," and "void," they were used interchangeably, and that, in connection with the particular statutes affecting the question now under consideration, the intention was merely to hold such transactions unenforceable. It is true in Swope v. Jordan, supra, the court, on page 180 of 107 Tenn., 64 S. W. 52, 56, stated: "The acts of foreign corporations which have not complied with law are said to be illegal, invalid, and unenforceable, and in some cases the expression is used that they are void. All these expressions mean the same thing,—that the contracts are illegal and invalid and unenforceable to the extent that the state will not lend its aid to their enforcement, and no right of action can be based thereon; but the

legislature may, if it see proper, and upon such terms as it deems best and proper, validate such contracts, and allow them to be enforced. * * *"

However, in that case the principal question before the court was whether or not the Act of the Legislature of Tennessee of 1895, c. 119, validating contracts of foreign corporations made before the passage of that act could have effect other than between the original parties or those claiming under them without superior equities and as to whether that statute could be given such retroactive effect as to divest the rights of innocent third parties. We do not understand that the question in the case necessarily called upon the court to construe its prior holdings other than as they were pertinent to the question then under consideration and that whether the contracts under consideration in the prior decisions had been held "illegal" or "void" was not a question in the Swope Case of material consideration. However that may be, as above stated, the latest holding of the Supreme Court of Tennessee is that contracts made by foreign corporations which have failed to comply with the statute laws of Tennessee are void on the grounds of public policy. By this construction this court is bound.

██ It is true, as contended by defendant, that a state cannot prescribe the qualifications of suitors in the courts of the United States, nor deprive them of the privileges to which they are entitled under the Constitution and laws of the United States. David Lupton's Sons v. Automobile Club, 225 U. S. 489, 32 S. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699. Yet it is equally true that, where a state statute has declared a transaction such as is involved in the instant case void, or where the highest court of the state in construing the statute has held such contracts void, federal courts are equally bound, and cannot lend their aid to the enforcement of a contract falling within either the terms of such statute or the construction so placed thereon by the state courts. This principle is too well established to need the citation of authorities to support it.

In Munday v. Wisconsin Trust Co., 252 U. S. 499, at page 503, 40 S. Ct. 365, 366, 64 L. Ed. 684, it is said by the Supreme Court of the United States construing a Wisconsin statute: "Where interstate commerce is not directly affected, a state may forbid foreign corporations from doing business or acquiring property within her borders except upon such terms as those prescribed by the Wisconsin statute"—citing Fritts v. Palmer, 132

U. S. 282, 10 S. Ct. 93, 33 L. Ed. 317; Chattanooga Nat. Building & Loan Ass'n v. Denson, 189 U. S. 408, 23 S. Ct. 630, 47 L. Ed. 870; Interstate Amusement Co. v. Albert, supra.

 The contention in behalf of plaintiff has been ably presented, and in many aspects is very persuasive; yet after a careful consideration of the questions presented, since at the time plaintiff made the contract upon which this suit is based it was doing business in the state of Tennessee, within the meaning of the state statutes, which business was, as contemplated by such statutes, an intrastate business, and since plaintiff had not complied with the Tennessee statutes authorizing it to do business in Tennessee, this suit cannot be maintained, and the judgment of the District Court dismissing the same is affirmed.